BOYCE (WILSON v.). See Case No. 17,793.

## Case No. 1,745.

### In re BOYD.

[2 Hughes, 349;[1] 5 N. B. R. 199.]

District Court, North Carolina.[2] March, 1871.

BANKRUPTCY — ASSETS — BANKRUPT'S RIGHT TO WIFE'S CHOSE IN ACTION—RIGHTS OF ASSIGNEE —FAILURE TO SCHEDULE ASSETS—EFFECT.

1. In May, 1863, a feme sole, being the owner, in her own right, of a chose in action, married, and a suit was instituted shortly thereafter to recover from the debtor in the name of the husband and wife. This suit continued pending until 1868, when the husband, upon his own petition, was declared a bankrupt, and an assignee was appointed and an assignment executed in the usual form. Thereafter the assignee was, upon his own motion, by order of the court, made party plaintiff with the wife, and a judgment was recovered in favor of the plaintiffs. *Held*, that the assignee may proceed to enforce the payment of such judgment by execution, and receive the money when collected—if this be done in the lifetime of the husband and wife—and if collected by him must distribute the same to creditors as the law directs.

2. The assignee is deprived of no right because the bankrupt has failed to schedule such chose in action.

3. Nor [are his rights affected] by the provisions of the constitution in North Carolina, adopted in 1868.

In bankruptcy.

BROOKS, District Judge. In this cause, a case agreed has been submitted under the provisions of the second clause of the sixth section of the bankruptcy act [of 1867, 14 Stat. 521], presenting an important question for the consideration of this court. After the argument of this question at Salisbury at the last special term, some of the authorities cited by the counsel not being acceptable, I was obliged to postpone its further consideration to enable me to make that careful examination of the authorities that the importance of the question demanded.

The facts submitted are as follows: Jane C. Forbes intermarried with William Boyd in May, 1863, she being at that time the owner of a slave that had been taken from

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
[2] [District not given.]

her possession unlawfully prior to the said marriage, by one Rader Winslow, who had sold and converted the same. In September, 1863, suit was commenced in the superior court of Mecklenburg county by Boyd and wife against Winslow for damages for the conversion of said slave. On the 30th day of May, 1868, said Boyd filed his petition in bankruptcy, and soon thereafter was duly declared a bankrupt according to the provisions of the bankrupt act of 1867. Subsequently John Wilkes was duly appointed assignee of said Boyd, and an assignment in due form of all the property and effects of Boyd was made to Wilkes as assignee. At fall term, 1869, which was the trial term of the suit against Winslow, Wilkes, as assignee of Boyd, was made party plaintiff with Mrs. Boyd—without her knowledge or consent—and judgment was recovered for eight hundred and fifty-seven dollars and ninety cents damages, and nineteen dollars and ninety cents costs in behalf of the plaintiffs. The case further states that Boyd did not render any statement of this claim in his schedule, and was discharged as a bankrupt in the year 1869, and the coverture still continues. And on this statement of facts this court is asked to decide whether Mrs. Boyd or John Wilkes, the assignee,' is entitled to the money collected on the execution issued on the judgment. If it had appeared that the execution which issued upon their judgment had been paid or in any way satisfied, and Wilkes, the assignee, had received the money, or if by any other means he had actually received the money for the judgment, I do not think there can be any authority found upon which to rest the claim of Mrs. Boyd to the money so received. But it is not stated that Wilkes, the assignee, has ever received the money. Then it is a question respecting the title to a chose in action of the wife that is presented.

It must be remembered that the numerous cases, both English and American, which so well settle the law in regard to the rights of the wife by survivorship to her choses in action, are not direct authorities upon the questions arising in this case, as it will be seen that they are all cases arising between the surviving wife and assignees or creditors of the deceased husband, or cases in which the wife's right to an equitable settlement are presented. And in this case it is the extent to which a husband may proceed during the lifetime of the wife in reducing her choses in action into his possession, and when the aid of a court of equity is not asked to effect that object. And yet a careful examination of the opinions of the learned chancellors in these cases has afforded me material assistance in arriving at a satisfactory conclusion upon the questions submitted in this case.

The facts stated render it necessary to make two principal inquiries: First. What rights did Boyd acquire upon his marriage in 1863 in the chose in action against Winslow? Second. Was any interest in that claim or right of action against Winslow assigned or transferred to or vested in Wilkes, his assignee in bankruptcy, by force of the bankruptcy law? And if any, then the extent or character of such interest?

There are other questions which have been suggested, which may be regarded as rather incidental to these principal questions stated, and which may be considered, and will be necessarily involved in the answers to them. I regard it as having been clearly settled both in England and in North Carolina, prior to the adoption of the provision in the present constitution, that by marriage the husband acquired the right to reduce to his possession his wife's choses in action, and when they were so reduced to possession by the husband during his coverture, such became absolutely his property.

In the case of Bosvil v. Brander, 1 P. Wms. 458, and Pringle v. Hodgson, 3 Ves. 617, the question was between a surviving wife and the assignees of a bankrupt and deceased husband. All that was decided in the first of these cases was, that the wife was not entitled to aid of the court of equity, to take the writing out of the hands of her deceased husband's assignee, though the decision was founded upon a principle that I do not consider correct; that the assignment in bankruptcy so passed the property in the choses of the wife, that no other or further act was required to be performed; and that the right to the debt was so vested in the assignee by operation of law as to defeat the right of the surviving wife. In the latter case Lord Rosslyn lays down the same doctrine broadly: "That the assignee at law has a right to the chose in action of the wife, and the law reduces it into his possession; the bankrupt law gives over all that the husband had or could dispose of to the assignee; the property is vested by law in them, and the question of survivorship is quite laid aside by the bankruptcy." In Miles v. Williams [1 P. Wms. 249], Parker, C. J., in delivering the opinion of the court of king's bench, noticed this point, and expressed himself strongly in favor of the assignees against the claim of the wife. These I regard as extreme cases, and they were very clearly so regarded by the eminent chancellors to whom the same questions were presented afterward for decision.

In the case of Grey v. Kentish [1 Atk. 280] 1 P. Wms. 249, and Gayer v. Wilkinson, 1 Brown, Ch. 50 [note], the same question was decided in favor of the surviving wife against the assignees, and in the subsequent case of Mitford v. Mitford, 9 Ves. 87, Sir Wm. Grant, then master of the rolls, places his decision in favor of the surviving wife upon the same ground, that the chose was not reduced into possession by the husband or any assignee of his during their coverture. If in this case there was presented the claim

of a surviving wife to her chose in action, not actually reduced into possession by her deceased husband, but assigned for a valuable consideration by him in his lifetime, though I would be strongly inclined to favor the wife's claim, yet I admit that the conflict between the very eminent judges before referred to would of itself be sufficient to require a very careful consideration before so deciding. In this case, however, such an assignment is not insisted on, but only such an assignment as the law makes, as incident to the bankruptcy proceedings in Boyd's case; and it is contended that by force of these proceedings Wilkes was vested with all the rights, interests, and estate that Boyd acquired by virtue of his marriage. And in reference to this demand against Winslow, the right to enter upon and continue the prosecution of the suit, and if during the joint lives of Boyd and wife judgment was recovered, to enforce payment of the same and receive the money.

It is quite clear, I think, that at the time the suit against Winslow was instituted, Mrs. Boyd could not have sued and recovered in her own name, or have released Winslow from the claim; and it is clear that Boyd could so far control his wife's interest as to sue as he did sue, or to have released the demand, without and even against consent of his wife. The right of the husband to recover and receive payment during coverture, is not only absolute at law, but exclusive. The wife (although the property is hers) cannot give a discharge. If the debtor pays the money to the wife without the husband's authority, he may be forced to pay it over again to the husband. In the case of Palmer v. Trevor, 1 Vern. 261, this is expressly held. In that case a testator had bequeathed to the plaintiff's wife one hundred pounds, to be paid within six months after his death, and a bill being filed for this legacy, the defence which the executor made was that he had paid the legacy to the plaintiff's wife, and had her receipt for the same. The executor insisted further, that at the time of the making of this will the plaintiff and his wife were separated, which was well known to the testator. But the Lord Keeper North held it to be no good payment, and decreed the legacy to be paid over to the husband with interest. This, at first view, would seem to be an extreme case, but high as the authority is, it is for me to consider now to what extent the law has been changed since that time. Since the decision last referred to, the law on the subject of the wife's chattels, personal, outstanding, or choses in action, underwent an elaborate examination by a learned and industrious judge, Sir Thomas Plummer. In the case of Purdew v. Jackson, 1 Russ. 1, after the most patient examination of the law, that learned judge observes, "that although the nature of the husband's interest is peculiar, yet the law defines it in the clear-est manner." Marriage, he says, is only a qualified gift to the husband of the wife's choses in action, upon condition that he reduces them into possession during its continuance. The wife's title is not divested by the marriage. The chose in action continues to belong to her, so that if the husband happened to die before his wife, she, and not his personal representative, will be entitled to it. Reduction into possession is necessary by the husband or by his authority, to defeat the wife's right if she survive him. Yet it was held by more than one eminent English judge. that an assignment by the husband, during coverture, of the wife's choses in action passed the title to the chose to the assignee so effectually that the subsequent death of the husband did not restore the right to the surviving wife, though still uncollected, and that such assignee could sue for and recover the same.

I do not mean to be understood as affirming this principle, but I have been forced to the conclusion that the assignment in bankruptcy vests in the assignee all the rights of the husband to the choses in action of the wife, existing and accruing from marriages contracted before the adoption of our present state constitution. And, as a consequence, the assignee may do all that the husband might do without such assignment, and that this embraces the right to sue for, recover, and receive such choses in action as that in question in this case; and having the right to recover, he must use due diligence in his efforts to collect, and having collected it in the lifetime of the husband, he must distribute the same to creditors as the law provides. It can make no difference in regard to the rights of the assignee, if the chose in action has or has not been placed in the schedule by the bankrupt.